UNITED STATES *v.* A. SAHADI & CO., INC. (No. 3921)[1]

---

[1] T. D. 48165.

United States Court of Customs and Patent Appeals, January 27, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.
*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for appellee.

[Oral argument December 2, 1935, by Mr. Jackson and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division. Each of the three judges wrote separate opinions. One judge concurred in the opinion of Judge Evans, and the other judge dissented.

The appeal relates to what may be termed a confection made from apricots. The manner of preparation is set out in Judge Evans' opinion as follows:

* * * The apricots are picked when ripe, mashed by hand and pressed through a wire sieve, by means of which process the skins and pits are separated from the pulp. This pulp, which contains the fruit juice also, is spread on boards in the sun and allowed to dry for five or six days, after which the sheets are smeared with olive oil to prevent sticking and then made into a roll of five pounds ten ounces, and in that condition brought into this country and sold by the importer as apricot paste. * * *

Only one witness testified concerning the product, Mr. A. Sahadi, president of the importing company, who witnessed the preparation of this character of merchandise in Damascus, Syria. In the foregoing statement it is said: "after which the sheets are smeared with olive oil to prevent sticking". The exact testimony on this phase of the case is as follows:

—A. * * * Then they smear the pulp on the board with just olive oil, so that when they put the pulp on it, it won't *dry*. (Italics ours.)

Q. What do they do, take the pulp out of this vat, and spread it on the board?—A. Yes; then they put it in the sun for 5 or 6 days, according to the weather. Then they pull the sheets out as you see it, and then to prevent it from sticking together they have to have a wet rag or sponge of olive oil, and just smear that on the top so they won't stick together, and they roll it into a roll of 5 pounds 10 ounces.

The Collector of Customs at the port of New York classified the merchandise under the second provision in paragraph 735, Tariff Act of 1930, as dried apricots and assessed the same with duty at two cents per pound.

The importer protested the said classification and assessment of duty and claimed the merchandise dutiable under the third provision in said paragraph 735 as—

Apricots * * * otherwise prepared or preserved, and not specially provided for, 35 per centum ad valorem,

and by amendment to the protest claimed it to be dutiable under paragraph 752 of the same act at the rate of 35 per centum ad valorem under the provision for "fruit pastes and fruit pulps".

The majority of the trial court held that the merchandise was further processed than dried apricots, that it was not necessary to determine whether or not it was in the form of a paste, and that it was properly classifiable under the third provision of said paragraph 735 as "Apricots * * * otherwise prepared or preserved, not specially provided for". From the judgment of the United States Customs Court, the Government has appealed here. The importer, appellee, stated that it took no cross appeal:

Inasmuch as the judgment entered by the Court sustained appellee's claim that the merchandise was dutiable at 35% ad valorem * * *.

Paragraph 735 of the Tariff Act of 1930 and the pertinent provisions of paragraph 752 of said act follow:

PAR. 735. Apricots, green, ripe, or in brine, one-half of 1 cent per pound; *dried, desiccated, or evaporated,* 2 cents per pound; *otherwise prepared or preserved, and not specially provided for,* 35 per centum ad valorem. (Italics ours.)

PAR. 752. Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, and mixtures of two or more fruits, prepared or preserved, 35 per centum ad valorem; *fruit pastes and fruit pulps,* 35 per centum ad valorem; * * * (Italics ours.)

In this court the Government argues in its principal brief that under certain carefully considered decisions of this court the importation must be regarded as apricots in a dried condition, and among the authorities cited are the cases of *Nootka Packing Co. et al.* v. *United States,* 22 C. C. P. A. (Customs) 464, T. D. 47464, where minced razor clam meat in cans was classified as clams packed in air-tight containers, rather than as shellfish, prepared or preserved; *French Kreme Co. et al.* v. *United States,* 16 Ct. Cust. Appls. 126, T. D. 42768, and *French Kreme Co. et al.* v. *United States,* T. D. 43739, 56 Treas. Dec. 635, wherein egg yolk, uncooked, prepared by the spray process into a dried powder form was held to be dried egg yolk rather than egg yolk, prepared or preserved, not specially provided for; and also the case of *United States* v. *Aki Co.,* 12 Ct.

Cust. Appls. 415, T. D. 40588, where raw fish, skinned and boned, cut up into sections and dried, was held to be dried fish, salted or unsalted, rather than "all other fish, skinned or boned, in bulk".

The opinions of Judges Evans and Keefe cite and discuss no authorities except the ruling and dissenting opinions in a former case by the Customs Court, *Armaghanian* v. *United States*, T. D. 43862, 57 Treas. Dec. 276 (Abstract 20503 on rehearing) and Judge Keefe refers to the said dried egg yolk cases. The importer in this court cites no authority bearing upon the proper classification of the merchandise at bar except *Armaghanian* v. *United States, supra*. It discusses the question of legislative adoption of the court's construction of certain statutory provisions involved in said case. We have found no decision except that in the *Armaghanian* case, *supra*, which is sufficiently in point to be of much help in arriving at our conclusion herein.

In the instant record there is no proof of commercial designation of any of the statutory terms involved in the decision of the issue presented.

We are constrained to agree with the decision of the majority of the trial court that the second provision: "Apricots * * * dried" was not by Congress intended to cover the merchandise involved. We think that the merchandise at bar consists of apricots which have been, before and after drying, further prepared than by drying. This fact, in part, distinguishes this case from the *Aki Co.* case, *supra*, the dried fish case. Unquestionably the record shows that the pulp contained all the edible portion of the apricot, and that the skin and seeds only were removed. It is argued that this material is dried and, therefore, that the resulting product is dried apricots for the same reason as that assigned in the dried fish case. The error in that position rests in the fact that the imported merchandise is more than dried apricots. Apricots were first made into a paste or pulp. This paste or pulp was then spread on a board. After drying, olive oil was smeared on the top surface and the mass was then rolled into a suitable form for a confection. In the fish case, while the fish had been boned and skinned, this process did not change the texture of the dried fish. It was still nothing more than dried fish.

The contention that the merchandise is not apricots, dried, in a tariff sense, is supported, we think, by a consideration of the fact that if the paste or pulp which was spread on the board had been shipped to this country in an undried condition, it is probable that it would not have been dutiable under paragraph 735, but would have found classification as a paste or a pulp under paragraph 752, although it, in fact, was apricots prepared or preserved. A subsequent drying would not make the product dried apricots, but dried paste or pulp. There is no *eo nomine* provision for dried pastes or pulps, but unquestionably the apricots from which the involved preparation was made

had been prepared or preserved otherwise than by drying, desiccating or evaporating and, therefore, the involved merchandise aptly responds to the last provision of said paragraph 735. The legislative history suggests that although Congress understood apricot paste or pulp to be prepared or preserved apricots, it intended that such pulp or paste should be dutiable under paragraph 752. There is nothing therein, however, which indicates an intent to require that apricots which had been processed into a paste or a pulp, which was subsequently dried, should find dutiable classification elsewhere than in the last provision of paragraph 735.

In the *Nootka Packing Co.* case, *supra*, the majority of the court held that the clam product there under consideration should be regarded as clams since it was thought that Congress, in attempting to protect the clam industry, must have intended to include within the clam paragraph, 721, that kind of merchandise. Said clam paragraph does not contain the term "prepared or preserved". The competing provisions and the legislative history differ materially in that case from those in the instant case. We were not there concerned with any process of drying. We see no merit in the Government's contention that the clam case is controlling of decision of the issue here presented.

Concerning the applicability and controlling influence of the *French Kreme Co.* cases, *supra*, we think the Government's contention in the instant case is satisfactorily met and answered by the apt language used by Judge Keefe in his concurring opinion as follows:

* * * The majority opinion in the foregoing case [the *Armaghanian* case] held the product to be dried apricots, basing the decision upon the authority of the so-called "dried egg yolk cases". Judge Waite, in dissenting, stated as follows:

In all those cases the commodity was admittedly dried egg yolk or dried egg albumen and known and dealt in as such. The efforts of the plaintiff were directed toward establishing that it was excluded from those terms by commercial designation. These efforts were unsuccessful and the merchandise held to be dried egg yolk and dried egg albumen. In the case at bar nothing was produced in support of the plaintiff's claim except a description of the process to which the apricots have been subjected and the official sample. An inspection of the sample discloses that it consists of very thin sheets of a dark brown mass rolled together, having no resemblance to any form of apricot.

I am in accord with the above dissenting opinion that the decisions in the dried yolk cases were not controlling in the dried apricot case reported in T. D. 43862. They are not controlling in this case, for the following reasons: First, the egg yolk was classified as "dried" and the importer attempted to prove that, even though the yolks were dried, they were not known as dried egg yolks, but were unsuccessful in their commercial evidence, whereas the commercial evidence introduced in rebuttal, by the Government was conclusive that the commodity was dealt in by the trade as dried egg yolks; second, the commodity sought to be classified as dried was not shown to have been commercially known as dried apricots, or even dried apricots within the common meaning of the term.

Judge Evans in his opinion seems to be of the impression that dried apricots in a tariff sense should be confined to the "ordinary com-

modity found in every community grocery store", which would eliminate apricots which might be dried apricots although additionally processed in many different ways. Upon the instant record we are not prepared to say that the term "Apricots * * * dried" should be confined to that particular kind of merchandise, but we do agree with the majority of the trial court that the imported merchandise at bar has been further processed and "otherwise prepared and preserved" than is provided for in the preceding portion of paragraph 735.

The importer argues in this court not only that the importation is apricots, prepared or preserved, but that it is a fruit paste or a fruit pulp and provided for in paragraph 752. There is no qualifying language connected with the said provision for fruit pastes and fruit pulps and as stated by Judge Evans it may be well said that in one sense of the word the imported merchandise is dried apricot pulp. We must remember that the Tariff Act of 1922 did not contain any *eo nomine* provision for fruit pastes and fruit pulps.

In the Summary of Tariff Information, 1921, Vol. 1, at page 1234, the following was called to the attention of Congress:

*Apricot paste* was held dutiable at 35 per cent under paragraph 735 as apricots prepared or preserved, rather than as an unenumerated manufactured article under paragraph 1459 (Ab. N. 1191).

The abstract decision referred to in the above quotation involved merchandise quite similar to that at bar. In the decision the court said:

The testimony showed that the apricot is melted, mashed, and pressed, and placed on planks of wood to dry in the sun. After it is dried in sheets three pieces are placed together. The commodity contains all of the fruit except the pit and the skin. * * *

In the said abstract decision the classification by the collector as apricots, prepared or preserved, was approved. Aside from the application of the olive oil, it would appear that the merchandise in the said abstract decision was identical with the goods at bar. The competing provisions in that case were "Apricots * * * otherwise prepared or preserved" and the nonenumerated, manufactured article paragraph. While the effect of the above legislative history may be stressed as supporting the contentions of both the importer and the Government in this case, it is not far fetched or illogical to conclude, we think, that Congress having full knowledge of the holdings of the court that merchandise of this character was classifiable for duty purposes under the "prepared" provision, was satisfied with that result, and made no change in paragraph 735 of the new act (rates of duty were changed) which would in any way indicate the intention of changing the said classification, and that the new

provision for fruit pastes and fruit pulps was meant to take care of numerous fruit pastes and fruit pulps, including fruit pastes and fruit pulps made from apricots, of a wholly different character from the highly processed, dried apricot product here involved.

The Government in its reply brief points out that an apricot pulp wholly different from the merchandise at bar has been in the past an article of commerce between the United States and other countries as is indicated in this court's decision in *Habicht* v. *United States*, 1 Ct. Cust. Appls. 10, T. D. 30772. Moreover, the provision for fruit pastes and fruit pulps does not contain the term "dried".

It seems to us that if Congress had sought to take prepared or preserved apricots such as are at bar out of paragraph 735 and put them under paragraph 752 in the fruit pastes and fruit pulps provision, it would have used appropriate language to do so. Moreover, the following pertinent dictionary definitions, which are set out in the Government's brief, are worthy of consideration:

Webster's New International Dictionary:
*Paste*—a soft confection made of the inspissated juice of fruit, licorice, or the like, with sugar, etc.

Funk & Wagnalls New Standard Dictionary:
*Paste*—A confection made of fruit-juices, sugar, gum, etc. * * *

Oxford Dictionary:
*Pulp*—The fleshy succulent part of a fruit * * *.

Webster's New International Dictionary:
*Pulp*—The soft, succulent part of any fruit; as, the pulp of a grape, orange, etc.

*Fleshy*. 3. bot. Succulent or pulpy, as the joints of a cactus, the pulp of certain fruits, etc.

*Succulent*. Full of juice, juicy.

In view of the foregoing considerations, we do not think that Congress, by the use of the term "fruit pastes and fruit pulps", intended to include therein the dried apricot product at bar. By the last holding we do not mean to intimate that this conclusion is or is not applicable to other fruit paragraphs in the Tariff Act of 1930, where in some instances language and rates of duty and the legislative history concerning the same differ in material respects.

The importer contends that by the provision for fruit pastes and fruit pulps, Congress intended to include apricot pulp and, therefore, distinguished apricot pulp from apricots, and that under our holding in *United States* v. *Davies Co.*, 11 Ct. Cust. Appls. 392, T. D. 39317, we must give consideration to this distinction by Congress, and argues that the lower court's holding in said *Armaghanian* case was known to Congress, and that the fruit paste and fruit pulp provision was enacted because of the holding in that case. We have hereinbefore answered this contention.

We think that the involved merchandise is apricots which are prepared or preserved otherwise than by drying, desiccating, or evaporating and, therefore, were properly held dutiable by the trial court at 35 per centum ad valorem under the third provision of paragraph 735.

The judgment of the United States Customs Court is *affirmed*.

HATFIELD, Judge, dissents.

GARRETT, Judge, concurs in the conclusion.